**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michelle RONNE, Defendant and Appellant.**

**Crim. No. 890320.**

Supreme Court of North Dakota.

July 3, 1990.

Melody R.J. Jensen, Asst. State's Atty., Fargo, for plaintiff and appellee. Submitted on brief.

DeLayne G. Nassif (argued), Fargo, for defendant and appellant.

ERICKSTAD, Chief Justice.

Michelle Ronne appeals from a judgment of conviction entered upon a jury verdict finding her guilty of criminal trespass in violation of Section 12.1–22–03(1), N.D. C.C.[1] We affirm.

Ronne and Kevin Eggen had a three-year-old son, Lucas, from a previous relationship. At the time of the conduct which precipitated this criminal action, Kevin was involved in a relationship with Linda Porter. According to Ronne, she went to Porter's house in Mapleton, North Dakota, on June 4, 1989, at approximately 3:30 a.m. to get Lucas. Ronne testified that she and Kevin had made arrangements for Kevin to have visitation with Lucas until 5:00 p.m. on the previous day and that Kevin failed to return Lucas at the arranged time. Ronne testified that after learning that Kevin and Lucas were at Porter's house, she went there and entered the house after hearing Kevin yell, "come in." Ronne testified that, after entering the house, she became involved in a confrontation with Porter during which Porter cut Ronne on the leg with a knife. Ronne testified that Kevin then pushed her out the door.

---

1. Section 12.1–22–03, N.D.C.C., provides in part:

   "*12.1–22–03. Criminal trespass.*
   "1. A person is guilty of a class C felony if, knowing that he is not licensed or privileged to do so, he enters or remains in a dwelling or in highly secured premises.

   "2. A person is guilty of a class A misdemeanor if, knowing that he is not licensed or privileged to do so, he:
   "a. Enters or remains in any building, occupied structure, or storage structure, or separately secured or occupied portion thereof; or
   "b. Enters or remains in any place so enclosed as manifestly to exclude intruders."

According to the State, Ronne entered Porter's house without permission. Porter and Kevin testified that they were asleep in the house and did not hear Ronne knock on the door. They testified that they did not give Ronne permission to enter the house. Porter testified that she awoke to hear a voice calling "Kevin, Kevin, Kevin." Eggen testified that he awoke and recognized Ronne's voice. Porter and Kevin testified that Ronne then turned a light on in the bedroom and came at Porter. Porter and Kevin both testified that Kevin had to physically remove Ronne from the house but that she forced her way back in and he had to again physically remove her. Kevin testified that Ronne cut her leg when she fell against the corner of the garage while he was removing her from the house.

When Lieutenant Arland Rasmussen of the Cass County Sheriff's Department arrived at the scene, he took a statement from Ronne that she knocked on the front door but received no answer and then entered the house. On September 8, 1989, Ronne made another statement to Deputy Rod Kitzan that she knocked on the front door, heard no answer, and then entered the house. A jury found Ronne guilty of criminal trespass, and she has appealed.

Ronne argues that she was "excused from any penalty for entering the premises" because of her anxiety and worry for Lucas. She contends that the trial court erred in refusing to give the following requested jury instruction on excuse from North Dakota Pattern Jury Instruction Criminal No. 2070:

"A person's conduct is excused if she believes that the facts are such that her conduct is necessary and appropriate, even though her belief is mistaken."

A defendant is entitled to an instruction based on a legal defense if there is evidence presented at trial to support that defense. *State v. Thiel*, 411 N.W.2d 66 (N.D.1987). A defendant is entitled to have the jury instructed on all defenses for which there is any support in the evidence, whether the defenses are consistent or inconsistent. *Id.*

Section 12.1–05–08, N.D.C.C., provides the basis in our criminal code for claiming the defense of "excuse":

"*Excuse.* A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate for any of the purposes which would establish a justification or excuse under this chapter, even though his belief is mistaken. However, if his belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability. Excuse under this section is a defense or affirmative defense according to which type of defense would be established had the facts been as the person believed them to be."

That section is part of ch. 12.1–05, N.D.C.C., which defines conduct that is justified or excused under our criminal code. Sections 12.1–05–02 through 12.1–05–07, N.D.C.C., describe the types of conduct that are justified and reflect society's determination that the actual existence of certain circumstances makes proper and legal what otherwise would be criminal conduct. *State v. Leidholm*, 334 N.W.2d 811 (N.D.1983). In contrast, excused conduct, as defined in Section 12.1–05–08, N.D.C.C., recognizes the criminality of conduct but excuses it because the actor reasonably but mistakenly believed that circumstances actually existed which would justify that conduct. *Id.*

Section 12.1–05–08, N.D.C.C., limits the excuse defense to a mistaken belief that the facts are such that an actor's conduct is necessary for any of the "purposes which would establish a justification or excuse" under ch. 12.1–05, N.D.C.C. In determining whether or not the actor's mistaken belief was reasonable, a subjective standard of reasonableness applies. *State v. Leidholm, supra.* Thus, a defendant may be entitled to an excuse instruction if there is evidence presented at trial that the defendant has a reasonable but mistaken belief that any of the statutory grounds for justification in ch. 12.1–05, N.D.C.C., are present.

■ In this case, Ronne asserts that her anxiety over and worry for Lucas entitled her to an instruction on excuse premised upon defense of others, which is a justification under Section 12.1–05–04, N.D.C.C.:

"*Defense of others.* A person is justified in using force upon another person in order to defend anyone else if:

"1. The person defended would be justified in defending himself; and

"2. The person coming to the defense has not, by provocation or otherwise, forfeited the right of self-defense."

■ However, Ronne did not request an accompanying instruction on defense of others under Section 12.1–05–04, N.D.C.C., or on any other conduct which constitutes a justification under ch. 12.1–05, N.D.C.C.[2] Additionally, there was no evidence presented at trial that Lucas was in any danger so that he would have been justified in defending himself, or that Ronne reasonably believed that Lucas would have been justified in defending himself.[3] Ronne's explanation for entering Porter's home does not constitute one of the "purposes which would establish a justification or excuse" under ch. 12.1–05, N.D.C.C., and she was therefore not entitled to the requested jury instruction.

■ Ronne also contends that she was "excused from any penalty for entering the premises" because Kevin invited her to come into the house when he yelled "come in." Her argument is essentially that the jury verdict was not supported by the evidence.

Our review of sufficiency of the evidence claims is well established. On appeal the defendant must show that the evidence, when viewed in the light most favorable to the verdict, reveals no reasonable inference of guilt. *State v. Frey*, 441 N.W.2d 668 (N.D.1989). We do not substitute our judgment for that of the jury where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction. *State v. Tininenko*, 371 N.W.2d 762 (N.D.1985). It is the function of the jury to weigh the evidence and judge the credibility of witnesses. *Id.*

Section 12.1–22–03(1), N.D.C.C., provides that a person is guilty of criminal trespass if, knowing he is not licensed or privileged to do so, he enters or remains in a dwelling. Privilege is the freedom or authority to act and to use property. *State v. Mehralian*, 301 N.W.2d 409 (N.D.1981); *cf. State v. Haugen*, 458 N.W.2d 288 (N.D.1990) ["privilege" in burglary statute means that a person is privileged if he may naturally be expected to be on premises often and in the natural course of his duties or habits]; *State v. Kreth*, 150 Vt. 406, 553 A.2d 554 (1988) [in criminal trespass statute "licensed" refers to a consensual entry while

---

**2.** During oral argument Ronne also suggested that she had to defend herself against Porter's assault with a knife. Although Ronne did testify at trial that Porter came at her with a knife, she further testified that that confrontation occurred *after* she had entered the house. That evidence does not entitle Ronne to an excuse and self-defense instruction for entering Porter's house. Moreover, Ronne did not request an accompanying self-defense instruction.

**3.** In her reply brief to this court, Ronne states:

"The appellant, Michelle Ronne, did have just cause for concern about her son due to Knowledge that Linda Porter's ex-husband can be abusive and due to wondering about Linda Porter's state of mind.

"Linda Porter's ex-husband is Known to be violent.

"The Cass County Sheriff's Department had a flyer posted to approach with caution, DANGEROUS.

"They had received information [that he] was in possession of a shotgun. It was also relayed to them that [he] had made threats against the Sheriff's Department. The information stated he had threatened to shoot anyone who tried to stop him driving his car (he was driving under a Suspended License). [Porter's ex-husband] has custody of his and Linda Porter's children, therefore there is some concern as to Linda's state of mind in allowing a known, violent man to have custody of their children."

She also relies upon unsworn statements from her mother and a babysitter. However, none of that evidence was presented at trial and we express no opinion as to whether or not that evidence would have been sufficient to warrant an appropriate instruction on excuse and an accompanying instruction on defense of others.

"privileged" refers to a nonconsensual entry where the actor may naturally be expected to be on the premises often and in the normal course of his duties or habits]; *Commonwealth of Pennsylvania v. Corbin,* 300 Pa.Super. 218, 446 A.2d 308 (1982) ["licensed or privileged" phrase in a burglary statute means any person is privileged if he may naturally be expected to be on the premises often and in the natural course of his duties or habits].

In this case the evidence, viewed in a light most favorable to the verdict, reveals that Ronne was not licensed or privileged to enter Porter's house. Both Porter and Kevin testified that they were both asleep when Ronne entered the house and neither of them told Ronne to "come in." At trial both Deputy Kitzan and Lieutenant Rasmussen of the Cass County Sheriff's Department testified that, in a prior statement to each of them, Ronne did not indicate that someone had told her to "come in" the house. Both officers testified that Ronne's prior statements indicated that she heard no answer after she knocked, and that she then entered the house. Although Ronne testified at trial that Kevin told her to "come in," the jury heard all of the testimony and was able to observe the demeanor of each of the witnesses and to judge their credibility. The jury obviously did not accept Ronne's testimony. Viewed in the light most favorable to the verdict, the evidence was sufficient to support the jury verdict that Ronne entered Porter's house without license or privilege.

■ Ronne contends that the underscored portion of the following instruction was erroneous:

> "This is a criminal action brought to this Court by the filing of an Information charging the Defendant, Michelle Ronne, with *having committed the offense of criminal trespass* within Cass County, North Dakota, on or about June 4, 1989."

She argues that "the jurors in their ignorance could conceivably [have] taken this [underscored language] as an order, where if 'having been charged with the crime of criminal trespass' were used it would have put the matter into their hands."

Ronne's argument ignores the context of that phrase in the instruction and the other jury instructions. The entire sentence informed the jury that this action was "a criminal action brought to this Court by the filing of an Information charging the Defendant, Michelle Ronne, with having committed the offense of criminal trespass within Cass County, North Dakota, on or about June 4, 1989." The instruction is unambiguous and is not an "order" to the jury that Ronne had committed criminal trespass.

Also, it is well established that jury instructions, when read as a whole, must correctly and adequately advise the jury of the law. *State v. White,* 390 N.W.2d 43 (N.D.1986). The jury was instructed that

> "[t]he fact that the Information charges the Defendant with a criminal offense is no evidence whatever, and must not be considered by you as evidence. The Information merely states the charge in legal form, upon which the State has a right to offer evidence, and outlines the issues to be determined by you from the evidence under these instructions."

The remaining instructions outlined that Ronne was presumed innocent and that the State must prove the allegations of the complaint beyond a reasonable doubt. The instructions, as a whole, correctly and adequately advised the jury on the charge and the State's burden of proof.

Ronne also contends that she was denied effective assistance of counsel. She argues that, among other things, her trial counsel was inept in preparing for trial, failed to confer with her about the case, and failed to properly cross-examine witnesses.

In *State v. Ricehill,* 415 N.W.2d 481 (N.D.1987), we outlined the standard for establishing claims of ineffective assistance of counsel. Generally those claims are most effectively presented in post-conviction relief proceedings. *Id.* We said that we will consider claims of ineffective assistance of counsel on direct appeal only if the record affirmatively shows ineffectiveness of constitutional dimensions or if the

parties stipulate that the record is adequate to determine the issue. *Id.*

In this case, there is no stipulation by the parties that the record was adequate to determine the issue, and we are unable to conclude from the record that Ronne's trial counsel was constitutionally ineffective. We therefore decline to address this issue. Ronne may raise this issue at an appropriate proceeding for post-conviction relief.

■ Ronne contends that the underscored statements by the court during sentencing could be construed as cruel and unusual punishment:

"I think this is a case that deserves some incarceration. *I think it's a case in which we certainly want to keep a short tether on this Defendant for a long time.* I'm not so sure that it deserves a felony conviction in the—in the long term.

　　*　　*　　*　　*　　*　　*

"I want you [State's Attorney] or the probation people to have a string on her that they can jerk on 24 hours' notice for about five years. And at the same time I'm not so sure that a deferred imp is—is appropriate, because I want her to see what the inside of the jail is like and to know that if she screws up anytime in the next five years, it's going to be five years of that." [Emphasis added.]

The court's statements were made in the context of considering various sentencing alternatives for the defendant, including probation. The trial court's conduct of which Ronne complains is the mere making of statements explaining the consequences of a violation of probation. The assertion that those statements are "cruel and unusual punishment" is without merit.

■ Ronne also contends that the sentence imposed by the trial court was illegal. She was sentenced to one year in prison and ordered to serve 30 days in jail with the balance suspended for five years subject to conditions of probation.

In *State v. Hass*, 268 N.W.2d 456, 464 (N.D.1978), we said:

"It is the rule in this jurisdiction that sentences within the range of the mini-mum and the maximum are within the discretion of the trial court, and 'will not be set aside for abuse of discretion unless: (1) the sentence exceeds the statutory limits [citation]; or (2) the trial judge substantially relied upon an impermissible factor in determining the severity of the sentence to be imposed [citation].' "

Ronne was found guilty of a class C felony, which carries a maximum penalty of five years incarceration. Section 12.1–32–01(4), N.D.C.C. The trial court's sentence did not exceed the statutory limit. *State v. Rohrich*, 450 N.W.2d 774 (N.D. 1990). Moreover, Ronne does not allege that the trial court relied upon an impermissible factor in sentencing her. *See State v. Manhattan*, 453 N.W.2d 758 (N.D. 1990); *State v. Hass, supra.*

Without citing any specific instance Ronne also contends that she was denied due process of law by not being allowed in the judge's chambers during court proceedings. There is nothing in this record to support Ronne's assertion. Moreover, assuming that she was not allowed in the judge's chambers during court proceedings, she has not demonstrated any prejudice. *See State v. Manhattan*, 453 N.W.2d 758 (N.D.1990).

■ Ronne also contends that the prosecutor lied to the jury during final argument when she argued that Kevin and Porter had been consistent throughout their testimony. The prosecutor's statements were a proper comment on the evidence and were within the scope of proper argument. *State v. Marks*, 452 N.W.2d 298 (N.D.1990).

■ Ronne also contends that the trial court erred in not granting her request made during the trial to appoint another attorney to represent her or to allow her to hire her own attorney.

Generally, appointment of substitute counsel may be warranted upon a showing of good cause when substitution will not unreasonably disrupt the judicial process. *State v. Iron Necklace*, 430 N.W.2d 66 (S.D.1988); *People v. Johnson*, 144 Mich. App. 125, 373 N.W.2d 263 (1985). A trial

court's decision will not be reversed on appeal in the absence of an abuse of discretion. *Id.* We conclude that the trial court did not abuse its discretion in denying Ronne's request to appoint another attorney during her trial.

The judgment of conviction is affirmed.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.