1997 ND 188

**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**William Jude HART, Defendant and Appellant.**

**Criminal No. 960370.**

Supreme Court of North Dakota.

Sept. 30, 1997.

Mark R. Boening (appearance), Assistant State's Attorney, Fargo, for plaintiff and appellee. Argued by Adam Hamm, third year law student.

Alisha Ankers, Fargo, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] William Jude Hart appealed from a conviction entered upon a jury verdict finding him guilty of attempted murder of Cliff Rodenburg. We hold Hart was not denied his Sixth Amendment right to self-representation, the trial court did not abuse its discretion in excluding some evidence about an alleged business relationship between Hart, Rodenburg and Bill Engelhardt, and the court committed harmless error in excluding Hart's testimony about a statement made by an unavailable declarant. We affirm.

I

[¶ 2] Hart shot Rodenburg on March 26, 1996, at the Fargo YMCA. The evidence about the shooting is conflicting. The State presented evidence Hart entered the weight room at the YMCA in the early morning hours of March 26 and shot Rodenburg five times in retaliation for Rodenburg filing a civil action against Hart and for Rodenburg's part in having Hart extradited to Iowa. According to Hart, he was involved in a business relationship with Rodenburg and Bill Engelhardt, and Rodenburg refused to pay Hart money. Hart testified he had approached Rodenburg earlier in the morning of March 26 in the YMCA parking lot in an attempt to locate Engelhardt, and Rodenburg shot at Hart. Hart testified he went to his motel room for a gun and returned to the YMCA where he located Rodenburg in the weight room. Hart testified Rodenburg fired shots at him, and he shot Rodenburg in self-defense.

[¶ 3] Rodenburg survived the shooting, and Hart was charged with attempted murder. The trial court granted Hart's request to represent himself at trial, but the court appointed standby counsel to assist him. During trial, standby counsel participated in some of the proceedings. A jury found Hart guilty of attempted murder, and he appealed.

[¶ 4] The district court had jurisdiction under N.D. Const. Art. VI, § 8 and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(b). We have jurisdiction under N.D. Const. Art. VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

II

[¶ 5] Hart asserts standby counsel's participation in the trial denied him his Sixth Amendment right to represent himself.

[¶ 6] In *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975), the United States Supreme Court held, as a corollary to a criminal defendant's Sixth Amendment right to counsel, the defendant also has a right to self-representation if the defendant knowingly and intelligently elects to proceed pro se. The Court explained a defendant should be made aware

of the dangers and disadvantages of proceeding pro se so the record establishes the defendant's decision is knowingly and intelligently made. *Faretta*, 422 U.S. at 834–36, 95 S.Ct. at 2541. The Court, however, recognized a defendant's right to self-representation is not a license to abuse the dignity of the courtroom, nor to ignore rules of procedure. The Court thus authorized the appointment, over a defendant's objection, of "standby counsel" to assist the defendant and to represent the defendant if termination of self-representation is necessary. *Faretta*, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46.

[¶ 7] In *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), the Court elaborated on the role of standby counsel. There the trial court permitted the defendant to proceed pro se, but appointed standby counsel to assist him. During trial, the defendant frequently changed his mind regarding standby counsel's role, objecting to standby counsel's participation on some occasions, but agreeing to it on other occasions. After his conviction, the defendant claimed standby counsel's participation at trial deprived him of his right to self-representation.

[¶ 8] The Court recognized a defendant's right to self-representation is not violated if the defendant agrees to standby counsel's participation at trial. *McKaskle*, 465 U.S. at 181–83, 104 S.Ct. at 953. In cases of unsolicited participation, however, the Court said standby counsel need not be categorically silenced, and the primary focus is whether the defendant had a fair chance to present his case in his own way. *McKaskle*, 465 U.S. at 176–77, 104 S.Ct. at 950. The Court imposed two limits on standby counsel's unsolicited participation: (1) the defendant must be entitled to preserve actual control over the case presented to the jury, and (2) standby counsel's participation must not be allowed to destroy the jury's perception the defendant is representing himself. *McKaskle*, 465 U.S. at 178–79, 104 S.Ct. at 951. For standby counsel's unsolicited participation outside the presence of the jury, a defendant's self-representation rights are preserved if he is allowed to address the court freely on his own behalf and if disagreements between standby counsel and the

defendant are resolved in the defendant's favor. *McKaskle*, 465 U.S. at 178–79, 104 S.Ct. at 951. For standby counsel's unsolicited participation in the presence of the jury, once a defendant agrees to any substantial participation by counsel, subsequent appearances are presumed to be with the defendant's acquiescence until he expressly and unambiguously renews his request to silence counsel. *McKaskle*, 465 U.S. at 181–83, 104 S.Ct. at 953. In *McKaskle*, 465 U.S. at 187–89, 104 S.Ct. at 956, the Court affirmed the defendant's conviction, holding his Sixth Amendment right to self-representation was not violated, because he was allowed to present his case in his own way and standby counsel's unsolicited participation in the presence of the jury was held within reasonable limits without seriously undermining the defendant's appearance to the jury as representing himself.

[¶ 9] Here, Hart informed the trial court he wanted to represent himself. The court granted Hart's request, but asked his previously appointed counsel, Joe Johnson, to "remain present in the event that Mr. Hart might need any legal advice or assistance." Hart then asked the court to "appoint a legal aid ... to assist [him] in reading and writing," and the court designated Johnson to assist Hart. The court outlined Johnson's status:

> "THE COURT: In the event that Mr. Hart requests of yourself either to read a document or to give any legal advice in the course of these proceedings, I wish you to be available to offer that assistance if requested.
>
> "MR. JOHNSON: Very well.
>
> "THE COURT: For all practical purposes if Mr. Hart wishes to represent himself he has a right under the constitution to do so."

[¶ 10] At trial, Hart made his own opening statement to the jury. During the State's case-in-chief, Hart objected to testimony by the State's witnesses, and he cross-examined the State's witnesses. Standby counsel's participation was limited to reading previous statements by witnesses during Hart's examination of the witnesses, to making an offer of proof outside the presence of the jury, and

to asking the court to sequester witnesses. During Hart's case-in-chief, Hart called Rodenburg to testify, and Hart conducted the examination of him. During Hart's examination of Rodenburg, Hart had Johnson read a previous statement by Rodenburg.

[¶ 11] Hart then took the stand. The court had previously informed Hart, outside the presence of the jury, of the procedure the court would employ if Hart exercised his right to testify:

"You may testify in a narrative form. If you testify in a narrative form, it will be necessary for you to write down that narrative form or have someone write it down for you so that the State is given an opportunity to object to those parts of the narrative that would be objectionable to them, and that the Court can rule on them.

"The other way that you may testify is through your counsel. You may give him such questions as you deem necessary or appropriate. And he may ask you those questions and you may answer those questions, subject to the objection of the State."

Standby counsel conducted the examination of Hart. Hart then called Deputy Gail Wischmann, and he examined her. Standby counsel thereafter questioned the four remaining defense witnesses, and the State's four rebuttal witnesses. Hart made his own closing argument to the jury.

[¶ 12] Hart concedes he knowingly and intelligently waived his right to an attorney. He contends the assistant he requested to aid him in reading and writing should not have been an attorney. Under *Faretta* and *McKaskle,* however, the trial court was authorized, over Hart's objection, to appoint standby counsel to assist Hart and to represent him if termination of self-representation was necessary. His argument the assistant he requested should not have been an attorney is meritless.

[¶ 13] Hart argues standby counsel assumed control of his defense in violation of his Sixth Amendment right to self-representation. Hart contends the trial court ordered him to confer with standby counsel and those consultations affected the jury's perception he was representing himself.

[¶ 14] Two of the consultations cited by Hart were outside the presence of the jury. The record does not show any disagreement between standby counsel and Hart regarding defense tactics during those two consultations. Instead, those consultations were to relieve the trial court of the need to explain evidentiary rules and courtroom procedure to Hart. In *McKaskle,* 465 U.S. at 184, 104 S.Ct. at 954, the Court explicitly said:

"A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel—even over the defendant's objection—to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals. Participation by counsel to steer a defendant through the basic procedures of trial is permissible even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own defense."

Under *McKaskle,* counsel's participation in those consultations did not violate Hart's Sixth Amendment right to self-representation.

[¶ 15] The third consultation cited by Hart was also outside the presence of the jury and involved establishing the procedure for Hart to testify at trial. Hart did not object to the procedure imposed by the court, and he has raised no issue about it on appeal. The record does not show any disagreement between standby counsel and Hart regarding the procedure for Hart to testify at trial. The only conclusion supported by this record is Hart agreed to standby counsel conducting the direct examination of him. Under *McKaskle,* 465 U.S. at 181–83, 104 S.Ct. at 953, a defendant's right to self-representation is not violated if the defendant agrees to standby counsel's participation.

[¶ 16] After Hart testified, he called Deputy Wischmann to testify. During Hart's examination of Wischmann, Johnson sought permission to ask Wischmann a couple of questions. The court refused to let

Johnson ask her questions, but allowed Johnson to read a document to Hart outside the presence of the jury. Hart then continued with his examination of Wischmann. Without any explanation in this record, standby counsel thereafter conducted the examination of the four remaining defense witnesses, and the State's four rebuttal witnesses.

[¶ 17] Although a clear statement showing Hart's acquiescence in standby counsel's participation would have removed any uncertainty in this case, under *McKaskle*, 465 U.S. at 181–83, 104 S.Ct. at 953, once Hart agreed to counsel's participation during the questioning of Hart, subsequent appearances by counsel are presumed to be with the defendant's acquiescence until he expressly and unambiguously renews his request to silence counsel. Hart did not expressly and unambiguously renew his request to silence counsel, and this record does not establish standby counsel's subsequent participation in the trial was unsolicited. The record also does not reflect there were any disagreements between counsel and Hart about the presentation of Hart's case to the jury. Nothing in this record suggests Hart was not allowed to present his case to the jury in his own way. We are not persuaded standby counsel's participation in this trial, whether solicited or not, seriously undermined Hart's appearance before the jury as representing himself. *See McKaskle*, 465 U.S. at 187–89, 104 S.Ct. at 956. To the extent Hart claims he lost control over his case, his lack of control is directly attributable to his unfamiliarity with rules of procedure. We hold Hart's Sixth Amendment right to self-representation was not violated.

### III

[¶ 18] Hart argues the trial court abused its discretion in refusing to allow the jury to hear evidence supporting his claim of self-defense.

### A

[¶ 19] Hart claims the trial court erred in excluding his testimony about a statement allegedly made by Engelhardt, who had died shortly before the shooting and was unavailable to testify at trial within the meaning of N.D.R.Ev. 804(a)(4). Hart's offer of proof was

"that at the time when he and Mr. Lathrum returned to Fargo and contacted Mr. Engelhardt, this witness[, Hart,] will testify that Mr. Engelhardt communicated to him that Mr. Rodenburg had contemplated arming himself, and that he was coming after Mr. Hart. Mr. Hart has put forth a defense of self-defense in this case, Your Honor. And this is directly relevant to Mr. Hart consequently arming himself to protect himself."

The trial court ruled Hart's proffered testimony was hearsay.

[¶ 20] Hart's offer of proof indicated he did not want to use Engelhardt's statement to prove the truth of the matter asserted—Rodenburg had armed himself and was coming after Hart—but to show Hart's state of mind. Under N.D.R.Ev. 801(c) hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hart's testimony about Engelhardt's statement was not offered to prove the truth of the matter asserted under N.D.R.Ev. 801(c) and had some relevance to his self-defense claim, which required his acts to be in fear of imminent unlawful bodily injury. *See* N.D.C.C. § 12.1–05–03; *State v. Leidholm*, 334 N.W.2d 811, 818 (N.D.1983) (reviewing law on self-defense); *State v. Jensen*, 251 N.W.2d 182, 188–89 (N.D.1977) (defendant's testimony about conversations with decedents which was offered to show defendant's state of mind was not hearsay and was improperly excluded; testimony was relevant to defendant's asserted defenses of mental disease or defect, intoxication, and self-defense). *See also People v. Cameron*, 52 Mich.App. 463, 217 N.W.2d 401, 402 (1974) (trial court erred in excluding defendant's testimony about decedent's threatening statements told to defendant by intermediary, because testimony was offered to show defendant's apprehensive state of mind in self-defense case and not to prove truth of matter asserted); *State v. Dokken*, 385 N.W.2d 493, 500 (S.D.1986) (evidence of threatening statements relevant to defendant's state of mind); *State v. Thur-*

ston, 299 Minn. 30, 216 N.W.2d 267, 269 (1974) (trial court erred in excluding evidence of victim's uncommunicated threats to kill defendant because statements showed victim's intent). We hold the trial court erred in ruling Hart's testimony about Engelhardt's statement was hearsay.

[¶ 21] Under N.D.R.Ev. 103(a), however, error may not be predicated upon the erroneous exclusion of evidence unless a substantial right of the party is affected. *See also* N.D.R.Crim.P. 52(a). Here, the jury heard similar evidence about Hart's state of mind when he testified "Mark Lathrum was with me when he heard that Cliff Rodenburg was going to—out to shoot me on sight." Hart had previously testified Rodenburg had personally told Hart that Rodenburg would kill him. Hart also testified Rodenburg had shot at him earlier on the morning of March 26 in the YMCA parking lot, and Rodenburg had initiated the gunfire in the weight room at the YMCA. Hart testified he shot Rodenburg after Rodenburg shot at him. Hart's self-defense evidence and evidence about his state of mind was heard by the jury in several other forms. The jury, however, did not believe his evidence, and we are not persuaded Hart's testimony about the statement allegedly made by Engelhardt would have produced a different result in this case. *See State v. Trotter*, 524 N.W.2d 601, 602 (N.D.1994) (error in excluding evidence which was merely cumulative to other properly admitted evidence would not have resulted in a different verdict and was harmless); *State v. Haugen*, 458 N.W.2d 288, 291–92 (N.D.1990) (error in limiting defendant's cross-examination of witness was not reversible). Under these circumstances, we conclude the court's erroneous exclusion of Hart's testimony about Engelhardt's statement did not have a significant impact upon the jury's verdict. We hold the exclusion of Hart's testimony about Engelhardt's statement did not affect Hart's substantial rights and does not require reversal. *See* N.D.R.Ev. 103(a) and N.D.R.Crim.P. 52(a).

## B

[¶ 22] Hart asserts the trial court erred in allowing the State to introduce Dr.

Frank Sepe's testimony that, several months before the shooting, Hart told Sepe "that son of a bitch [Rodenburg] is going down hard." Hart argues the evidence was highly prejudicial to him and should not have been admitted under the prior bad acts and character evidence provisions of N.D.R.Ev. 404. At trial, Hart did not object to the introduction of the evidence under N.D.R.Ev. 404. Instead, he objected to the evidence on the ground of relevancy. *See* N.D.R.Ev. 103(a)(1) (objection to introduction of evidence must state specific ground). An issue not raised in the trial court is generally not reviewable on appeal unless it constitutes "obvious error" under N.D.R.Crim.P. 52(b). *E.g., State v. Raywalt*, 436 N.W.2d 234, 239 (N.D.1989). Our authority to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice. *Raywalt* at 239–40. We conclude the error alleged by Hart does not rise to the level of obvious error under N.D.R.Crim.P. 52(b), and we therefore decline to consider it.

## C

[¶ 23] Hart also claims the trial court precluded him from presenting evidence about his business relationship with Rodenburg and Engelhardt to provide "a more complete story and put the shooting into context."

[¶ 24] The trial court allowed Hart to present some evidence about the alleged business relationship. The court, however, sustained some relevancy objections to testimony about the relationship. A trial court has broad discretion to decide if evidence is relevant. *State v. Huwe*, 413 N.W.2d 350, 352 (N.D.1987), *overruled on other grounds by State v. Himmerick*, 499 N.W.2d 568, 571–72 (N.D.1993). Hart has cited no specific examples where the court refused to allow him to testify about his alleged business relationship with Rodenburg and Engelhardt. Instead, he broadly claims the court abused its discretion. As the appellant, Hart bears the burden on appeal of establishing error. *See, e.g., City of Grand Forks v. Dohman*, 552 N.W.2d 66, 68 (N.D. 1996). In the absence of any specific cita-

tions to excluded evidence in this record, we reject Hart's broad claims of error, and we conclude the trial court acted within the limits of its discretion in deciding some of the evidence about the alleged business relationship was irrelevant to Hart's self-defense claim. *See* N.D.C.C. § 12.1–05–03 (self-defense requires defendant to act in fear of imminent unlawful bodily injury).

## IV

[¶ 25] Hart argues he was provided ineffective assistance of counsel. Hart's argument apparently assumes court-appointed counsel was forced upon him in violation of his Sixth Amendment right to self-representation. We have previously held Hart's Sixth Amendment right to self-representation was not violated, and he has articulated no standard for ineffective assistance of standby counsel. In *Faretta*, 422 U.S. at 834, n. 46, 95 S.Ct. at 2541, n. 46, the Court said "whatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"

## V

[¶ 26] Hart asserts there was insufficient evidence to support the jury verdict. We have repeatedly said to successfully claim insufficiency of the evidence, a defendant must show the evidence, when viewed in a light most favorable to the verdict, supports no reasonable inference of guilt. *E.g., State v. Breding*, 526 N.W.2d 465, 469 (N.D.1995). It is the exclusive function of the jury to weigh the evidence and to judge the credibility of the evidence. *E.g., State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982).

[¶ 27] Here, the evidence about the shooting is conflicting. The jury, however, obviously believed the State's evidence and did not find Hart's evidence credible. Under our deferential standard of review, the evidence, when viewed in the light most favorable to the verdict, supports an inference of guilt. We hold the evidence is sufficient to support the jury verdict.

## VI

[¶ 28] We affirm Hart's conviction.

[¶ 29] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.