2013 ND 188

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Travis Allan SAMSHAL, Defendant and Appellant.**

No. 20120436.

Supreme Court of North Dakota.

Oct. 22, 2013.

Meredith H. Larson, Assistant State's Attorney, Grand Forks, N.D., for plaintiff and appellee.

Kelsey L. Gentzkow (argued) and Blake D. Hankey (on brief), Grand Forks, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶1] Travis Samshal appealed from a criminal judgment entered after a jury found him guilty of reckless endangerment. We conclude the district court erred in excluding evidence about threatening statements the victim allegedly made to Samshal. We reverse Samshal's conviction and remand for a new trial.

I

[¶2] Samshal lived in a two-bedroom apartment in Grand Forks with a roommate, Leonel Franco. On December 14, 2011, Samshal fired a rifle inside his apartment, shooting in Franco's direction. Samshal was charged by information with one count of reckless endangerment, alleging he created a substantial risk of serious bodily injury or death to Franco and other people living in the same building by shooting a rifle at Franco and manifested an extreme indifference to the value of human life. The information was amended in February 2012 to charge Samshal with the additional offense of attempted murder.

[¶3] A jury trial was held in October 2012. Samshal claimed he was acting in self-defense and in defense of the premises. Samshal testified at the trial and was asked about threatening statements Franco allegedly made to him prior to and

during the December 14 incident. The State objected to Samshal's testimony, arguing the testimony was hearsay. Samshal argued the evidence was not hearsay because the testimony was offered to show his state of mind, it was not offered for the truth of the matter asserted, and it was relevant to his defense. The court sustained the State's objection, ruling the statements were offered for the truth of the matter asserted and were hearsay. The court advised Samshal he could testify about his reaction to Franco's statements or how he felt about the statements, but he could not testify about the content of the statements. Samshal raised the issue again during the trial, but the court reaffirmed its earlier ruling excluding the testimony.

[¶ 4] Samshal submitted proposed jury instructions, including instructions on self-defense, limits on use of excessive or deadly force, and use of force in defense of premises or property. The district court gave instructions on self-defense and limits on the use of excessive or deadly force in its final instructions to the jury; however, the court refused to give the entire instruction Samshal requested for limits on the use of excessive or deadly force or the defense of premises or property instruction. During jury deliberations the jury asked, "If the defendant used excessive force, can he still be found to have acted in self defense." The court instructed the jury to reread the instruction on the limits on the use of excessive or deadly force. The jury found Samshal was guilty of reckless endangerment and not guilty of attempted murder. Samshal was sentenced and a criminal judgment was entered.

II

[¶ 5] Samshal argues the district court erred in refusing to allow him to testify about threatening statements made by the victim, Franco. He claims the statements were offered to show his state of mind and were not hearsay. He contends the statements were extremely relevant to his defense because they established what effect the conversations had on his state of mind and showed he feared Franco would hurt or kill him.

[¶ 6] A district court has discretion in evidentiary matters, and its decision to admit or exclude evidence will not be reversed on appeal unless the court abused its discretion. *State v. Wacht*, 2013 ND 126, ¶ 23, 833 N.W.2d 455. A court abuses its discretion when it acts in an arbitrary or capricious manner or when it misinterprets or misapplies the law. *Id.*

[¶ 7] Samshal testified about his relationship with Franco, arguments they had before December 14, a physical altercation that occurred a couple of weeks before the incident, and the December 14 incident. Samshal wanted to testify about threatening statements he claimed Franco made to him prior to and during the December 14 incident. Samshal's offer of proof was that Franco told Samshal, "I hate you. I hate you. I hate you," "I'm going to kill you," "I will kill you. I will kill you. I hate you. I hate you," and that the statements showed Samshal's state of mind and were relevant to his claimed defense. The district court excluded Samshal's testimony about the content of the statements, ruling the statements were clearly being offered for the truth of the matter asserted and were inadmissible hearsay. The court advised Samshal that he could not testify about the content of the statements, but he could testify about his own reaction to the statements and how he felt.

[¶ 8] Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." N.D.R.Ev. 801(c). This Court has held that a defendant's testimony about statements made by the victim of the alleged offense, offered to establish the defendant's state of mind, are not hearsay because they are not offered to prove the truth of the matter asserted. *State v. Hart*, 1997 ND 188, ¶ 20, 569 N.W.2d 451; *see also State v. Bernstein*, 2005 ND APP 6, ¶¶ 23–24, 697 N.W.2d 371. We have held that a district court abuses its discretion when it excludes testimony as hearsay if the statement is not offered to prove the truth of the matter asserted and the testimony has some relevance to the defendant's defense. *Hart*, at ¶ 20.

[¶ 9] In this case, Samshal argued he was not offering the testimony about the statements to prove the truth of the matter asserted—that Franco hated him and was going to kill him—but to show Samshal's state of mind. Samshal also argued the statements were relevant to his defense and his state of mind went to the "crux" of his defense. Samshal's self-defense claim required that his acts be in fear of imminent unlawful bodily injury. *See* N.D.C.C. § 12.1–05–03; *Hart*, 1997 ND 188, ¶ 20, 569 N.W.2d 451. Samshal offered his testimony about Franco's statements to show that he feared Franco was going to harm him. Samshal's testimony about Franco's threatening statements was offered to establish Samshal's state of mind and was not hearsay. Furthermore, the testimony was relevant to Samshal's asserted defense. We conclude the court erred in excluding Samshal's testimony about Franco's statements.

[¶ 10] The State contends any error was harmless and was not reversible error. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." N.D.R.Ev. 103(a). Samshal was able to testify that Franco became visibly upset with him on multiple occasions, Franco yelled at him, he felt Franco was controlling him, Franco's anger made him uncomfortable and fearful, and he was scared for his life at times. However, Samshal alleged he was acting in self-defense when he shot at Franco on December 14. He claimed he was fearful of Franco, he got into a physical altercation with Franco a couple of weeks before the December 14 incident, he was physically harmed during that altercation, and Franco's behavior was escalating. He testified Franco attempted to enter his bedroom on December 14, he tried to keep Franco out of the room, he was afraid for his life, he warned Franco that he would shoot him if Franco did not stay out of his bedroom, Franco entered the room despite his warnings, and he shot over Franco's shoulder in an act of self-defense. Evidence about Samshal's state of mind was relevant and material to his defense. The exclusion of the evidence harmed Samshal's ability to present his defense and affected his substantial rights. We conclude the error was not harmless.

[¶ 11] Because the district court improperly excluded admissible evidence relevant to Samshal's defense and the error was not harmless, we reverse Samshal's conviction and remand for a new trial on the charge of reckless endangerment.

### III

[¶ 12] Although the evidentiary issue is dispositive, Samshal also raised other issues in his appeal that are likely to arise on remand, and therefore we will also address those issues. *See M.M. v. Fargo Pub. Sch. Dist. No. 1*, 2010 ND 102, ¶ 23, 783 N.W.2d 806.

### A

[¶ 13] Samshal argues the district court erred by failing to give his requested

jury instruction on defense of premises and property. He contends there was evidence to support the defense and the nonexistence of the defense is an essential element of the crime.

▮▮▮ [¶ 14] Jury instructions, when read as a whole, must fairly inform the jury of the law. *State v. Starke*, 2011 ND 147, ¶ 12, 800 N.W.2d 705. The court is not required to instruct the jury in the exact language a party requests, and the court may refuse to give an instruction if it is irrelevant or inapplicable. *Id.* A defendant is entitled to a jury instruction on a defense if there is evidence to support it and it creates a reasonable doubt about an element of the charged offense. *Id.* at ¶ 17. The State must prove the absence of the defense beyond a reasonable doubt. *Id.* We view the evidence in the light most favorable to the defendant to determine whether there is sufficient evidence to support an instruction. *Id.*

▮▮▮ [¶ 15] Section 12.1–05–06, N.D.C.C., provides a defense for the use of force to defend premises or property:

> Force is justified if it is used to prevent or terminate an unlawful entry or other trespass in or upon premises, or to prevent an unlawful carrying away or damaging of property, if the person using such force first requests the person against whom such force is to be used to desist from his interference with the premises or property. . . .

"Premises" means "all or any part of a building or real property, or any structure, vehicle, or watercraft used for overnight lodging of persons, or used by persons for carrying on business therein." N.D.C.C. § 12.1–05–12(4). "Trespass" is not specifically defined in N.D.C.C. ch. 12.1–05, but the North Dakota Legislature defined criminal trespass in N.D.C.C. § 12.1–22–03; *see Starke*, 2011 ND 147, ¶ 14, 800 N.W.2d 705. Trespassing includes entering any place, without license or privilege to do so, when notice against trespass is given by actual communication by the individual in charge of the premises or remaining on the property of another without authority after being requested to leave the property by a duly authorized individual. N.D.C.C. § 12.1–22–03. "Generally, defense of premises . . . may not be relied on against one whose conduct is justified." *Starke*, at ¶ 18.

[¶ 16] The district court refused to give Samshal's requested instruction on the use of force in defense of premises or property, ruling the issue of whether Franco had a right to be on the premises was a legal determination, Franco had a right and was not trespassing, there was an oral lease, and the lease was never terminated.

[¶ 17] Defense of premises anticipates an unlawful entry or other trespass in or upon the premises. There must be evidence Franco unlawfully entered or otherwise trespassed in or upon the premises for Samshal to be entitled to an instruction on the defense. Samshal claims Franco was trespassing because he told Franco to leave the apartment after the altercation that occurred a couple of weeks before the December 14 incident, Franco did not move out, and there was no evidence Franco paid any rent or utilities after he was told to leave. Franco was a cotenant and paid rent on the apartment monthly. Although there was evidence Samshal told Franco to leave after the altercation, Samshal testified he did not bring up the issue again and he wanted to "keep the peace." There was no evidence the parties had a written lease. A party may terminate a month-to-month tenancy by giving at least one calendar month's written notice. N.D.C.C. § 47–16–15. There was no evidence the lease was terminated or that Samshal had started eviction proceedings against Franco. Because Franco was a

cotenant there was no evidence that he unlawfully entered the apartment or was otherwise trespassing.

[¶ 18] Samshal also argues there was sufficient evidence to support a defense of premises instruction because there was evidence Franco was trespassing by entering his bedroom. Samshal contends Franco did not have a right to enter his bedroom, he told Franco not to enter his bedroom numerous times on December 14, Franco would not listen to him, and Franco's entry into his bedroom constituted trespassing. Samshal argues Fourth Amendment cases from other jurisdictions have held that a person has a reasonable expectation of privacy in his bedroom in a house that he rents with others. *See State v. Fleming,* 790 N.W.2d 560, 564–67 (Iowa 2010).

[¶ 19] This Court has not addressed whether a roommate has a reasonable expectation of privacy in his bedroom and we do not decide it in this case. Simply because an individual may have an expectation of privacy in a place for purposes of the Fourth Amendment, does not mean the individual has the ability to exclude all others from that place or that another's entry into that place constitutes trespassing. *See State v. Hayes,* 2012 ND 9, ¶ 15, 809 N.W.2d 309 (discussing relevant factors for an expectation of privacy and recognizing the ability to control or exclude others' use of the property is one factor, also recognizing cases have held a non-overnight guest in the home of another has a reasonable expectation of privacy); *Fleming,* 790 N.W.2d at 565 (stating the ability to exclude all other individuals from an area is not necessary for a person's expectation of privacy to be reasonable). Samshal has not cited any case law in which a court has held that a roommate is trespassing when he enters another roommate's bedroom.

[¶ 20] Our decision is consistent with decisions in other cases holding a defendant is not entitled to a defense of premises instruction when the case involves a cohabitant as the alleged trespasser. *See State v. Hare,* 575 N.W.2d 828, 832 (Minn. 1998) (statute contemplates an unauthorized intrusion into the defendant's dwelling and the defense does not apply when the defendant and victim reside in the same dwelling); *State v. Warren,* 147 N.H. 567, 794 A.2d 790, 793 (2002) (defense of premises statute does not apply where the assailant is a cohabitant); *State v. Rambo,* 401 N.J.Super. 506, 951 A.2d 1075, 1087 (2008) (defendant's wife was not a trespasser, she was a co-owner of the property, and the trial court did not err in declining to give a jury instruction on the use of force in defense of premises); *see also Crunk v. State,* 934 S.W.2d 788, 794 (Tex. Crim.App.1996) (roommate did not commit the offense of criminal trespass by entering another roommate's unlocked bedroom in a house shared by multiple individuals).

[¶ 21] On remand, the district court is not required to give a defense of premises instruction if the issue arises again based on the same evidence.

B

[¶ 22] Samshal argues the district court erred in failing to give the entire jury instruction he requested for limits on the use of excessive or deadly force, including the portions related to the use of deadly force. He claims the proposed instruction would have answered the jury's question about whether they could find he acted in self-defense if he used excessive force.

[¶ 23] Samshal's requested instruction for limits on the use of excessive or deadly force stated:

A person is not justified in using more force than is necessary and appropriate under the circumstances.

Deadly force is justified if it is used in lawful self-defense, or in lawful self[sic]-defense of others, and the force is necessary to protect the actor or anyone else against death, serious bodily injury, or the commission of a felony involving violence.

Deadly force is justified when used by an individual in possession or control of a dwelling if the force is necessary to prevent commission of arson, burglary, robbery or a felony involving violence upon or in the dwelling, and the use of force other than deadly force for these purposes would expose any individual to substantial danger of serious bodily injury.

The court refused to give the entire requested instruction, stating the force used was not deadly and the portions of the instruction related to deadly force did not apply. The court's instruction stated, "A person is not justified in using more force than is necessary and appropriate under the circumstances."

[¶ 24] Deadly force is:

force which a person uses with the intent of causing, or which he knows creates a substantial risk of causing, death or serious bodily injury. A threat to cause death or serious bodily injury, by the production of a weapon or otherwise, so long as the actor's intent is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force.

N.D.C.C. § 12.1–05–12(1). There was evidence Samshal fired a rifle in Franco's direction. There was evidence Samshal fired the rifle in his and Franco's apartment and there were people living in neighboring apartment units. There was also evidence about Samshal's intent. If the issue arises again on remand based on the same evidence, the court should give the entire instruction, including the portions related to the use of deadly force.

IV

[¶ 25] We reverse the criminal judgment and remand for a new trial on the charge of reckless endangerment.

[¶ 26] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.